DOMÍNGUEZ, PLAINTIFF AND APPELLANT, v. PORTO RICO RAIL-
WAY, LIGHT AND POWER COMPANY, DEFENDANT AND RE-
SPONDENT.

## APPEAL from the District Court of Humacao.

### No. 944.—Decided originally June 28, 1913.

Motion for reconsideration decided November 19, 1913.

RAILROADS—CROSSING ON PUBLIC HIGHWAY.—In accordance with section 12 of
Act No. 64 of 1911, railroad companies are obliged to place chains, gates
or other suitable protective devices at all crossings on Insular public roads.

ID.—GATEKEEPERS—SUITABLE PROTECTIVE DEVICE—NOSCITUR A SOCIIS.—In ac-
cordance with the doctrine of *noscitur a sociis,* the words "or other suitable
protective devices," used in section 12 of Act No. 64 of 1911, must be under-
stood in the sense that said suitable protective devices must be similar in
character to gates or chains and produce like results, and therefore the sub-
stitution of gates or chains by a person employed by a company as gate-
keeper to give notice with a flag to passers-by of the approach of a train
is not a suitable protective device similar to the chains or gates required
by law.

NEGLIGENCE—RAILROADS.—Noncompliance by railroad companies with section 12
of Act No. 64 of 1911 by substituting for gates or chains an employe to
signal passers-by with a flag, constitutes negligence *per se.*

CROSSING ON PUBLIC HIGHWAY—RIGHT OF WAY.—Grade crossings on public roads
do not belong exclusively to railroad companies whose tracks cross them,
but persons passing over them have the same right to their use, and there-
fore when the gatekeeper saw that the automobile did not obey his signals
he should not have given right of way to the train.

NEGLIGENCE OF DRIVER—PASSENGERS.—As a general rule the negligence of the
driver is not attributable to a passenger who has no control over the driver.

ON MOTION TO RECONSIDER.

RECONSIDERATION—CONSTRUCTION—GRADE CROSSING—NEGLIGENCE—PASSENGER.—
The respondent having moved for a reconsideration of the judgment rendered
in this case on June 28, 1913, it was *held:* That the words "place (*sitio*) of
the crossing," used in the original opinion, refer not solely to the point
where the railway crosses the highway, but also to its approaches and that
the plaintiff was not negligent because he did not see the signals to stop
until the moment of entering upon the crossing, because, even though he had
an opportunity to see the signals, it was not shown that he saw them in time
to avoid the accident, and because he was under no obligation to be watch-
ing the driver of the vehicle.

NEGLIGENCE—NEGLIGENCE OF DEFENDANT'S EMPLOYE NOT PLEADED—GÉNERAL DENIAL OF NEGLIGENCE.—Although it was not alleged in the complaint that the defendant was guilty of negligence because the gatekeeper gave the right of way to the train before the automobile in which the plaintiff was traveling had obeyed his signals to stop, nevertheless, as the defendant denied that the accident was due to the fault or negligence of its employe and as the evidence introduced without objection on the part of the defendant showed that the gatekeeper did so give the right of way to the train, this court was justified in making the statement on this point which it did in the opinion now under consideration.

APPEAL—DEFENSE NOT ALLEGED IN COMPLAINT.—The defendant not having alleged as a matter of defense in the answer that there was not sufficient time to stop the train after it was seen that the *chauffeur* had paid no attention to the signals of the gatekeeper and the same not having been brought out in the evidence, this court was not required to consider that question in its opinion.

GATEKEEPER'S DUTY.—The case of *Robinson* v. *Western Pacific R. R. Co.*, 48 Cal., 409, sustains the doctrine that it is the duty of the gatekeeper not to give the right of way to a train crossing a public road until the vehicles have obeyed the signals to stop.

APPEAL—FAILURE TO ALLEGE NEGLIGENCE IN COMPLAINT—GENERAL DENIAL OF NEGLIGENCE.—Although no fault or negligence on the part of the defendant was alleged in the complaint and this omission was not demurred to by the defendant in the lower court, but, on the contrary, the defendant denied in its answer the existence of fault or negligence on the part of its employes, this court was under no obligation to consider on appeal the ground of demurrer alleged for the first time in this court that the complaint did not state facts sufficient to constitute a cause of action, because the denial of negligence in the answer supplied the omission of such allegation in the complaint.

CONSTRUCTION OF LAW.—The construction given to section 12 of Act No. 64 of March 9, 1911, in the opinion delivered in this case on June 28, 1913, to the effect that a gatekeeper is not a suitable device similar to gates and chains to prevent entrance to a railroad crossing is not forced or prejudicial solely because the defendant maintains that it knows no other devices similar to gates and chains.

The facts are stated in the opinion.

*Messrs. Francisco González, Juan B. Huyke* and *Carlos Travecier* for appellant.

*Mr. J. Henri Brown* for respondent.

MR. JUSTICE ALDREY delivered the opinion of the court.

This is an appeal taken by the plaintiff from a judgment of the District Court of Humacao dismissing an action brought against the corporation Porto Rico Railway, Light and Power Company to recover a certain sum of money as damages suffered in consequence of a collision between the automobile

in which the plaintiff was traveling and a train belonging to said defendant.

From the findings of fact of the court and an examination of the statement of the case we may arrive at the conclusion that on November 6, 1911, the plaintiff, Jesús Domínguez, a merchant of Humacao, engaged and paid a certain amount for a seat as a passenger in an automobile which was to convey him and other passengers from Caguas to San Juan; that said plaintiff frequently traveled over the highway from Caguas to San Juan; that he was not acquainted with the *chauffeur* who was to drive the car; that at a place near Caguas the railway of the defendant company crosses said Insular highway at grade, and while at said crossing there are posts bearing the notices "Look out for the train," "Stop," "Look," "Listen," "Railroad crossing," there are no bars or chains, but the defendant company employs a watchman at the place for the purpose of warning passers-by of the approach of trains and of signaling the trains regarding the crossing; that when the automobile in which the plaintiff was traveling arrived at said crossing the watchman signaled it to stop by displaying a red flag and at the same time with a green flag signaled a train to pass; that a buggy was waiting at the crossing; that the *chauffeur* did not stop the automobile but swerved to the left side of the highway, which is about 10 meters wide at that place, crossed the track at the moment when the train arrived and was struck by the train, one of the results of the collision, which occurred at about 3.30 p. m., being that the plaintiff received several blows and wounds; that the top of the automobile was up but the curtains were not; that on that day, as it was not yet time for the train to arrive at Caguas, the plaintiff took passage in the automobile so as to arrive at San Juan more quickly, he having often gone from Caguas to San Juan in an automobile; that the plaintiff's sight and hearing are not defective, and when they were approaching the grade crossing he saw a woman with a flag which she raised at the

moment when the automobile was entering the crossing; that the lower court found it proven by a preponderance of the evidence that before the train reached the crossing the engineer blew the whistle and rang the bell; that at the grade crossing there is a hillock on the right side of the railroad looking from Caguas to San Juan which at the time was planted in cane and prevented a train coming from Río Piedras to Caguas from being seen; that before the automobile reached the crossing the watchman flagged it, but it did not stop.

The grounds upon which the lower court based its judgment in favor of the defendant were that there was no negligence on the part of the defendant in not placing bars or chains at the crossing inasmuch as it had a watchman there who complied with his duty by warning the automobile, and that the *chauffeur* and the plaintiff were both negligent because, knowing of the dangerous place and being able to see and hear, they did nothing to prevent the automobile from crossing the track.

As negligence is the consequence of non-compliance with some duty, we will see what was the duty of the defendant company regarding the place where the accident occurred for which the plaintiff claims damages.

On March 9, 1911, the Legislature of Porto Rico passed Act No. 64 of that year, which went into effect on the day of its approval, concerning the regulation of railroad transportation, section 12 of which reads as follows:

"Section 12.—Be it further enacted, that all railroad companies of public service be and are hereby obliged to construct and maintain chains, gates, or other suitable protective devices, at all crossings of Insular public roads, and at all such other public crossings as the Executive Council may designate. Any railroad company failing to establish and maintain the gates or chains at the crossings required by this Act, and such other crossings as the Executive Council may direct to be made and maintained, shall be guilty of a misdemeanor, and on conviction thereof in any court of competent jurisdiction shall be fined a sum not exceeding $100 for each and every offense."

As the defendant company had failed to place any gates or chains at the said grade crossing on the insular public road, but employed a person to give warnings by means of a red flag to passers-by of the approach of trains, we must consider whether by using that employe in place of the gates and chains the company complied with the provisions of the law authorizing it to use any other suitable protective means.

Gates and chains are the means used to close any place and prevent passage, and when they are employed at a railroad crossing they close and prevent passage over the track. When the gates or chains are in place it is practically impossible to enter the crossing unless these are broken or jumped over, therefore they are a means of such a nature that when in place they prevent accidents and collisions, which is the object of the law in ordering their use. As was said in the case of *Chicago and Alton R. R. Co.* v. *Wise,* 206 Ill., 453, 69 N. E. Rep., 500, affirmed in 106 Ill. App., 174, the gates required by the statute are intended to serve as a warning as well as a physical obstruction. Therefore, when the law requires that chains, gates or other suitable protective devices shall be placed at crossings of Insular public roads it is to be understood that such suitable protective devices shall be of a kind resembling such gates or chains in order to secure results similar to those which it was the intention of the legislators to obtain by means of the gates or chains. According to the rule *noscitur a sociis,* when words of a certain legal signification are followed by others of a more general import which are not so specific and limited, the general word or words should be construed in the sense that they are applicable to the persons or things of like kind as those designated in the specific word or words, unless it should appear that such was not the intention of the legislators. In the following cases words of a general meaning have been construed in this manner. *Miller* v. *State,* 23 N. E. Rep., 95; *The People* v. *Richards,* 18 N. Y., 142; *McGaffin* v. *City of Cohoes,* 30 Am. Rep., 309.

Applying these principles to the case at bar, we must conclude that the person employed as gate-keeper by the defendant corporation to give warning to passers-by of the approach of trains by means of a flag is not an adequate protective device similar or equal to the chain or gate required by law, inasmuch as it does not obstruct or prevent physically an entrance to the track. Therefore, on the date on which the accident occurred the defendant corporation had not complied with the requirements imposed by law of placing chains, gates or other suitable protective devices at the crossing for the protection of passers-by, which failure to comply with the statutory provision constitutes negligence *per se.* 33 Cyc., 968, and cases cited in note 8.

Besides, grade crossings on the public roads do not belong exclusively to the railroad companies passing over them, but persons passing over them have an equal right to their use, therefore when the gate-keeper saw that the automobile disobeyed his warning he should not have given the right of way to the train, but should have signaled it to stop because the train should not have crossed at that place until the vehicles approaching the crossing had obeyed his signals in view of the lack of the safeguards required by law. *Robinson* v. *Western P. R. R. Co.,* 48 Cal., 409, and cases cited.

In view of the foregoing, the defendant corporation was guilty of negligence and the lower court erred in holding the contrary.

The *chauffeur* who was driving the automobile knew that place for he had been driving his car for some months and knew that there were neither gates nor chains at the crossing, therefore he should have been careful and prudent when nearing the crossing and should have stopped his car to look and listen or reduced its speed to such an extent as to enable him to stop it at any moment. His failure to take such precautions constituted negligence on his part, so much so that if he had proceeded as a careful man would have done the accident could not have occurred in spite of the negligence

of the defendant; therefore, notwithstanding such negligence, the proximate cause of the collision was the entrance of the automobile on the track without said precautions having been taken.

In view of the foregoing let us see whether the negligence of the *chauffeur* can prejudice the plaintiff, who was a passenger in the former's vehicle, and prevent him from recovering for the damages which he suffered.

While the general rule established by English decisions was that the negligence of the driver would be attributed to a passenger in cases of accidents caused by the negligence of a third party to which the negligence of the driver contributed and this doctrine was followed in a few English and American decisions, said decisions were expressly rejected later in England and disapproved by the Supreme Court of the United States in the case of *Little* v. *Hackett*, 116 U. S., 366, 6 S. Ct., 391, 29 L. ed., 652, the general rule now being that the negligence of the driver is not attributable to the passenger when the latter has no control over said driver. It is true, as held by the lower court, that as an exception to this general rule the negligence of the driver may be attributed to the passenger when the latter had an opportunity of discovering and avoiding the danger by the exercise of ordinary care and neither discovered nor prevented it, but, in order to conclude that the negligence of a *chauffeur* who drives an automobile may be imputed to the passenger seated in the *tonneau,* it is necessary that the defendant prove that the circumstances were such that the appellant was under obligation to call attention during the trip to the grade crossing on the public highway. We do not believe that the mere fact that the plaintiff knew of the existence of said crossing imposed upon him the duty of looking out for the same and of notifying the driver of the automobile. Although the appellant was traveling with a *chauffeur* whom he did not know, he had a right to expect him to be careful and prudent like the majority of men and to confide in his skill in the management of the car, it being

very difficult in such class of vehicles to determine at a moment's notice whether an accident can or cannot be avoided on account of the high rate of speed. The appellant began his journey with that *chauffeur* and it has not been shown that up to the moment of the collision which originated the claim anything had occurred which threw any doubt upon the skill or prudence of the driver. We think that the appellant was not under any obligation to keep a lookout for every danger which might exist on the road, or even for those which he knew about, or that he was required to call the attention of the driver to them in each case. Neither do we believe that the rule that the passenger could see and hear is so strict as to imply always that necessarily the passenger actually did see and hear, unless it is proved that in point of fact he was looking in the direction of the dangerous place.

In view of the circumstances of this case as they appear in the facts hereinbefore set forth and taking into consideration the class of vehicle in which the appellant was traveling, we are of the opinion that the negligence of the driver is not chargeable to the appellant and that the lower court erred in so holding.

Judgment should be reversed and a new trial granted.

*Reversed and a new trial ordered.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice MacLeary took no part in this decision.

A motion for reconsideration having been filed by the respondent, it was overruled on November 19, 1913, Mr. Justice Aldrey delivering the opinion of the court as follows:

The defendant-respondent has moved for a reconsideration of the final judgment rendered by us in this case. We will consider the different grounds on which the motion is based in the order in which they were alleged.

As a first ground it is alleged that the judgment is based on a mistake as regards the facts proven, for the following reasons:

"(a) Because the judgment is based on the mistaken supposition that the gatekeeper did not signal the automobile until it had reached the grade crossing; and

"(b) Because it also holds mistakenly that the signals of the gatekeeper were not seen by the plaintiff until he reached' the crossing."

Regarding allegation (a), we will say that the opinion rendered in this case did not state that the gatekeeper failed to signal the automobile until the latter had reached the crossing, which appears to be the understanding of the mover. What we said was that the signals were given when the automobile arrived at the *place (sitio) of the crossing,* which words do not refer only to the point where the railway crosses the highway but also to its approaches. Besides, to evolve the conclusions which we arrived at in the opinion it is immaterial whether the gatekeeper signaled the automobile before it reached the crossing or when it arrived at the grade crossing itself, for we have held that the plaintiff was not negligent because he *did not see* the signals until the moment of entering upon the crossing and was under no obligation to be continually watching the driver, and because even though he had an opportunity to see the signals, it was not shown that he saw them in time to avoid the accident.

In the second ground for reconsideration we are requested to strike from the opinion the statement that the gatekeeper employed by the defendant company was guilty of negligence in giving the right of way to the train before the automobile in which the plaintiff was traveling had obeyed the signals to stop, in support of which it is alleged:

"(a) That said pronouncement was not an object of the allegations of the complaint;

"(b) That it is not shown that there was sufficient time to stop the train after it was seen that the chauffeur had paid no attention to the signals of the gatekeeper; and

"(c) Because the case of *Robinson* v. *Western Pac. R. R. Co.*, cited in the opinion, does not support the doctrine that it is the duty of the gatekeeper not to give the right of way to a train crossing a public road until the vehicles have obeyed the signals to stop."

As to averment (*a*), although this act of negligence was not alleged in the complaint, nevertheless, as the defendant denied that the accident was due to any fault or negligence on the part of its employes, said denial raised the question of whether they were actually negligent or at fault and since it was shown from the evidence introduced without objection on the part of the defendant company that the gatekeeper gave the right of way to the train at the same time that he signaled the automobile to stop, we were justified in making the statement now sought to be stricken out.  As to the ground assigned under (*b*), this averment not having been alleged by the defendant as a matter of defense nor brought out in the evidence, we were not required to consider that question.  As to averment (*c*), although the language in *Robinson* v. *Western Pac. R. R. Co.*, 48 Cal., 409, is not identical with our own, still the same conclusions are there reached. The said case refers to an accident to a woman while crossing a railroad track behind a train which was standing on a crossing of a public street, and the court there said: "If there are persons in front of a locomotive about to start, the bell warns them to leave the track; but if they do not leave it, the engineer is not justified in driving his engine over them." Applying this doctrine to the case at bar, it is equivalent to saying that a person employed as gatekeeper should not give the right of way to a train to cross the public road when he sees that an automobile being driven towards the track crossing has not obeyed his signals to stop.  The court also said: "A man should have been stationed where he could see the rails in the direction in which the train was to move, upon whose signal that the line was clear the engineer should have acted."  And further on it is stated in the same opinion that "Unless we can declare that a foot passenger was debarred

the use of that portion of the street while a train of cars remained stationary near by, we must conclude that the plaintiff was justified in believing that she could safely cross the track when and where she made the attempt.''

In support of the reconsideration prayed for, the third ground alleges the failure of this court as well as of the lower court to decide the question raised by the defendant relative to the insufficiency of facts stated in the complaint to constitute a cause of action, since the said complaint contains no allegation alleging fault or negligence on the part of the defendant. This objection was not made in the lower court but was raised for the first time in the brief submitted by the defendant on appeal. The answer of the defendant denied the existence of fault or negligence on the part of its employees.

As we said in the case of *Olivieri* v. *McK. Jones*, 17 P. R. R., 1115: ''The cases cited by appellants, namely, 110 Cal., 169; 99 Cal., 259, and 113 Cal., 532, are only authorities to the fact that when a complainant has gone to trial and obtained a judgment, if the complaint should lack some averment that is supplied by the answer, the complaint, after such trial, is considered cured or aided by the answer. Such a condition of things amounts to a waiver or an estoppel.''

In the last of the cases cited, viz., *Vance* v. *Anderson*, it is stated that although in section 579 of Pomeroy on Remedies the opinion is advanced that the said rule should be confined to cases in which the answer affirmatively alleges the fact omitted from the complaint, although sometimes it has been applied when the answer simply contained a denial of the facts which should have been averred by the plaintiff; nevertheless, the court finds that the practice in California has been to treat express denials as sufficient to cure the defect in the complaint. In harmony, then, with that doctrine, when the defendant company expressly denied in its answer the existence of fault or negligence on the part of its employes it supplied the omission of such allegation in the complaint and rendered unnecessary a consideration of that objection.

It is alleged.in the fourth ground of the motion that our construction of section 12 of Act No. 64 in relation to the. doctrine of *noscitur a sociis,* violates:

"(*a*) The principle that penal statutes should be strictly construed and any ambiguity decided in favor of the presumed transgressor;

"(*b*) The rule that statutes should be so construed as to give meaning to all of the language thereof,.and that our interpretation of the words "other suitable devices" to mean "a device to obstruct or prevent an entrance to a railroad crossing" leaves the words of the act without effect, because in practice no other devices than gates and chains are known in railroad operations for preventing such entrance;

"(*c*) Because the complaint does not allege a violation of the statute, for it was neither alleged nor proved that the crossing is on a public insular highway or that there were no gates nor chains at said crossing."

Regarding the point (*a*), we are unable to hold that a gatekeeper is a suitable device similar to gates and chains without doing violence to the law, for which reason our construction of the statute is not forced or prejudicial. As to point (*b*), the averment that the defendant is acquainted with no other devices to prevent entrance to the track than gates and chains, is not enough to warrant the conclusion that no such devices actually exist. Relative to point (*c*), the evidence showed that at the place of the accident the track of the defendant company crossed the public Insular highway leading from Caguas to San Juan and also that at that time there were neither gates nor chains at the said crossing.

For the foregoing reasons we are of the opinion that no reasons exist for a reconsideration of the judgment and therefore the motion must be overruled.

*Motion to reconsider overruled.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice MacLeary took no part in this decision.